(C. D. 940)

ROBERT E. MILLER & CO., INC. v. UNITED STATES

## United States Customs Court, Third Division

(Decided July 6, 1945)

Puckhafer, Rode & Rode (John D. Rode of counsel) for the plaintiff.
Paul P. Rao, Assistant Attorney General (Robert C. O'Grady, special attorney), for the defendant.

Before CLINE, KEEFE,. and EKWALL, Judges

EKWALL, Judge: This is a protest against the assessment of countervailing duties under section 303 of the Tariff Act of 1930 on an entry of thumbtacks from Germany. The goods were entered for consumption, and estimated duty paid on February 24, 1937. They were appraised October 7, 1940, and the entry was liquidated October 6, 1942, with an increase over the amount deposited on entry of $75.17, which was the amount of the countervailing duty imposed on the merchandise, and which amount was fixed by the Commissioner of Customs, approved by the Secretary of the Treasury, in his letter of September 23, 1942, copy of which is attached to the entry papers herein as transmitted by the collector to this court with the protest, in accordance with section 515 of the Tariff Act of 1930, thus making it part of the "record" that is before the court.

It appears that the relatively long interval between the entry of the thumbtacks and their appraisement was due to an investigation under the Antidumping Act of 1921 (U. S. C. Tit. 19, sec. 160 et al.) ordered in T. D. 46615 (64 Treas. Dec. 216), order revoked in T. D. 50234 (76 Treas. Dec. 87) of August 29, 1940.

It should be stated at the outset that the countervailing duties were assessed not because of any outright bounty or grant bestowed by the exporting country, but on the ground that the currency control exercised by the exporting country (Germany) had been judicially held by our courts to. constitute in operation and effect such a bounty or grant as to justify the imposition of countervailing duty under section 303, supra. Woolworth v. United States, 28 C. C. P. A. (Customs) 239, C. A. D. 151; Mueller v. United States, idem 249, C. A. D. 152.

Under date of June 4, 1936, the following instructions were promulgated by the Secretary of the Treasury and published as T. D. 48360:

\*       \*       \*       \*       \*       \*       \*

To Collectors of Customs and Others Concerned:

Official reports and other data in the files of the Department establish to its satisfaction that bounties and/or grants are paid and/or bestowed, directly or indirectly, on the export to the United States of articles of the kinds named below, which are dutiable under the provisions of the Tariff Act of 1930.

Notice is hereby given that, pursuant to the provisions of section 303 of the Tariff Act of 1930, countervailing duties equal to any bounty and/or grant found to have been paid and/or bestowed will be collected on articles of the kinds named below when imported directly or indirectly from Germany after thirty days following publication of this notice in a weekly issue of the TREASURY DECISIONS.

The liquidation of all entries covering merchandise of the kinds named below, imported directly or indirectly from Germany after thirty days following publication of this notice in the weekly TREASURY DECISIONS, shall be suspended pending the declaration of the net total amount of the bounty and/or grant determined or estimated to have been paid and/or bestowed, and the net amount of countervailing duties to be collected. A deposit of estimated countervailing duties shall be required at the time of entry in an amount equal to the percentage of invoice value stated below in connection with the name of the article.

The articles subject to this notice are as follows:

| Article | Percentage of invoice value |
|---|---|
| *      *      *      *      *      *      * | |
| Thumb·tacks | 31 |
| *      *      *      *      *      *      * | |

The facts in regard to each importation within the purview of this notice shall be reported promptly and in full to the Bureau of Customs.

JAMES H. MOYLE,
*Commissioner of Customs.*

( .

\*      \*      \*      \*      \*      \*      \*

Under date of August 14, 1936, further instructions were issued to the collectors of customs which were published in T. D. 48479 and are as follows:

\*      \*      \*      \*      \*      \*      \*

The Department is in receipt of official advice to the effect that, with respect to any dutiable merchandise which will be or has been exported directly or indirectly from Germany pursuant to agreements entered into after August 2, 1936, the German Government has taken measures to insure that no scrip or bond procedure was or will be allowed, no public or private bounty or subsidy was or will be paid, and that the use of no German currency other than free gold exchange marks or free inland marks was or will be permitted.

In view of the foregoing, the provisions of T. D. 48360, as amended by T. D. 48444 and modified by T. D. 48463, shall not apply to direct or indirect imports from Germany of the commodities listed therein if the collector of customs concerned shall be satisfied by documentary evidence that the contract of purchase or other agreement pursuant to which they were exported from Germany was entered into after August 2, 1936, or, in the cases of cameras, calf and kid leather, and surgical instruments, after July 25, 1936.

\*      \*      \*      \*      \*      \*      \*

The contention of the plaintiff herein is that these thumbtacks were exported from Germany pursuant to a contract of purchase or other agreement entered into after August 2, 1936; that the collector of customs was satisfied of such fact by documentary evidence at the time of entry; that the instant importation fell within the terms of T. D. 48479, *supra;* and that the assessment of countervailing duty

for the first time on liquidation was without authority in law and was in direct contravention of long-established administrative practice.

At the hearing counsel for the plaintiff admitted that this transaction was in Aski marks and that the German Government promised that on and after August 2, 1936, they would not permit payment in Aski marks.

Plaintiff produced the testimony of one witness who stated that the shipments were paid for in Aski marks obtained from Theodore von Knoop & Co., a dealer in foreign exchange, on April 10, 1937. The witness further stated that he had not obtained permission from the German Government to deal in Aski marks.

On behalf of the Government a number of documentary exhibits were offered and received in evidence, consisting to a great extent of letters. Exhibit 6 is a letter dated August 7, 1936, from the shipper of the thumbtacks to the plaintiff herein, in which the following appears:

We are very sorry to have to inform you that since the 3rd of August 1936 any further barter permits will not be given any more. We are further informed that it is also impossible since the 3rd inst. to pay in Aski or Register-Marks. Permits given must be settled soonest but no further will be agreed.

Plaintiff's witness testified that nothing in this letter referred to the instant merchandise. Nevertheless, the general statements therein are enlightening and will be discussed below.

There is also in evidence a letter from the plaintiff to the shipper (exhibit 11) in which reference is made to "our orders placed before August 3rd for 10 million American Style Thumb Tacks, or any other orders for payment in Aski Marks."

As we view this case, the question for determination is whether failure of the collector of customs to require a deposit of estimated countervailing duties at the time of importation raised a presumption that he "was satisfied by documentary evidence that the contract of purchase" for these thumbtacks was entered into after August 2, 1936, and if so, whether that presumption has been rebutted. As stated above, an investigation was being made under the Anti-dumping Act of 1921 as to these thumbtacks. Liquidation of the entry could not, therefore, have taken place until the completion of that investigation. It may very well be that in view of that situation the collector deemed it unnecessary to demand the deposit of estimated countervailing duty upon entry. Furthermore, exhibit 6, *supra*, states in regard to payment in Aski marks that after August 2:

Permits given must be settled soonest but no further will be agreed.

The court interprets this to mean that permits which had been issued by the German Government for payment in Aski marks and which had not been used would be honored after August 2, 1936, but that

no new permits would be issued. We think it is safe to assume that the collector was cognizant of this situation. The record discloses that acting under authority of T. D. 48360, *supra*, the entry was transmitted to the United States Agency Service which reported on June 6, 1942, that investigation revealed barter or benefit had been received and the matter was referred to Washington for review. Moreover, even if the collector's failure to require such deposit established a presumption, it has been overcome by his later action when at the time of liquidation he assessed a sum as countervailing duty. Can it be said that the collector's failure to demand the amount of estimated countervailing duty at the time of entry precluded him from legally making such assessment at the time of liquidation? We think not. It appears from the official correspondence in the file transmitted to the court by the collector that there was considerable confusion in regard to the practice to be followed in handling importations of merchandise from Germany subject to the provisions of T. D. 48360, *supra*. This confusion, apparently, was not cleared up until the letter from the Commissioner of Customs to the collector at New York under date of March 2, 1939. In that letter, the collector was instructed that entries embracing, among other things, thumbtacks, should be referred to the supervising customs agent at the port of New York for investigation and subsequently transmitted to the Bureau of Customs, whether or not the entry papers or other information before the collector indicated payment or bestowal of a bounty or grant upon the exportation of the merchandise. That the collector followed these instructions is shown by a letter which is part of the files, under date of June 16, 1942, addressed to the collector at New York by the customs agent, and by the letter of the Commissioner of Customs to the collector at New York under date of September 23, 1942, in which it is estimated and declared that the amount of the bounty or grant applicable to entry No. 824759 here involved is $75.17.

Counsel for the plaintiff stated at the hearing that he did not raise the question of whether a bounty had been paid, nor does he question but that if proper procedure had been followed the Secretary of the Treasury would have been justified in finding that a bounty or grant had been bestowed. He also admits this is an Aski mark transaction. However, in his brief he contends that the assessment of this countervailing duty on liquidation, long after importation, was not made pursuant to a regular and orderly proclaimed declaration of the Secretary of the Treasury, but was arrived at when there was in existence no authority for such collection or assessment. In this connection we call attention to the fact that T. D. 48360, *supra*, in addition to directing that estimated countervailing duties be deposited at the time of entry, directs that the liquidation of entries

involving certain enumerated articles, including thumbtacks, "imported directly or indirectly from Germany after thirty days following publication of this notice in the weekly TREASURY DECISIONS, shall be suspended pending the declaration of the net total amount of the bounty and/or grant determined or estimated to have been paid and/or bestowed, and the net amount of countervailing duties to be collected."

Moreover, under date of August 31, 1938, as shown by a letter from the Acting Commissioner of Customs to the collector at New York, certified as a true copy a part of the files in this case, the following appears:

In some cases submitted by you for declaration of the net amounts of bounties or grants paid or bestowed on goods specifically mentioned in T. D. 48360 you have failed to include goods the orders for which were accepted after July 25 and August 2, 1936, even in cases where merchandise mentioned in T. D. 48360, and covered by orders accepted after the dates mentioned were benefited by the payment or bestowal of bounties or grants through the medium of the use of controlled marks purchased at a discount from the free rate of exchange. In this connection you are informed that with reference to merchandise covered specifically by T. D. 48360 you have been and will continue to be advised to collect countervailing duties where bounties or grants have been or are found to be paid or bestowed. Treasury Decisions 48463 and 48479 are not to be construed as relieving merchandise covered by T. D. 48360 of assessment of countervailing duties in proper cases regardless of the fact that invoices may indicate that the orders were accepted subsequent to July 25, or August 2, 1936. If controlled marks acquired by the importer at a discount were used in payment for merchandise claimed to be covered by an order accepted after July 25, or August 2, 1936, it would seem that the German authorities have been satisfied that the merchandise was not exported from Germany pursuant to an agreement entered into after the pertinent date mentioned.

It is noteworthy that this letter was written 2 years after T. D. 48479 was promulgated and we think it safe to assume it related to entries which had been suspended pending investigation and determination or estimation of the net total amount of the bounty and the net amount of countervailing duty to be collected.

We find no merit in plaintiff's contention set forth in his brief that the assessment of this countervailing duty on liquidation "was not made pursuant to a regular and orderly proclaimed declaration of the Secretary of the Treasury but was clearly arrived at after importation and when there was in existence no authority for such collection or assessment." We think this contention is answered by the findings in the case of *Mueller* v. *United States, supra,* which held that T. D. 48360, *supra,* wherein the estimated countervailing duties were found to be assessable upon certain importations from Germany, was legal and proper and in conformity with the statute. That case further held that a letter addressed to the collector by the Commissioner of

Customs declaring the net amount of the bounty or grant did not affect the finding that a bounty or grant was being paid or bestowed, as expressed in said T. D. 48360, and that the said Treasury decision, and not the letter, constituted the statutory finding relative to the net amount.

In connection with the reasons for the collector's failure to demand estimated countervailing duties at the time of entry, let us consider the information which the record discloses was before him. At that time he had the invoice and entry papers before him. The invoice states:

The orders have been accepted on November 28th and Dezember [sic] 9th 1936.

In view of this statement the collector was justified in assuming that the situation was covered by T. D. 48360, *supra*, as modified by T. D. 48479, *supra*, that is, that the contract of purchase was entered into after August 2, 1936, and that the reichsmarks of the invoice were "freely convertible into foreign currencies" or that they were "free reichsmarks usable within" Germany. However, while the matter was still within his jurisdiction, the collector requested an investigation by the Customs Agency Service to determine whether or not a bounty was paid or bestowed in connection with this entry. This is evidenced by a certified copy of a letter from the Customs Agency Service to the collector under date of June 16, 1942, referring to such request, which is part of the official file. We also find in the official file a certified copy of instructions from the Commissioner of Customs, approved by the Secretary of the Treasury, in which the collector is directed to collect an amount of $75.17 as countervailing duty on this entry. Therefore, the record clearly shows that while *at the time of entry* the collector did not have knowledge of the true facts of this case, when such facts came to his knowledge through official channels, he assessed the appropriate countervailing duty, which assessment was properly made inasmuch as the entry had not been liquidated.

It is difficult to understand how plaintiff can justify his position. As we understand his claim, as stated above, it is in substance that this transaction falls within the scope of T. D. 48479. To substantiate that claim plaintiff introduced evidence in an attempt to prove that this merchandise was ordered after August 2, 1936, but plaintiff's witness and his attorney both admitted that it was paid for in Aski marks. Therefore, we must either doubt the credibility of the witness or the good faith of the German Government. Moreover, there is no denial by the plaintiff that a bounty was received by reason of the method of payment for this merchandise.

Upon such a record this court cannot find that the collector's failure to assess estimated countervailing duty upon entry renders his subsequent assessment upon liquidation illegal.

We find no merit in the contention made in plaintiff's brief that this assessment was in contravention of long-continued administrative practice in that 30 days' notice of contemplated assessment of countervailing duty was not given, for the reason that we consider T. D. 48479 not a revocation, but a modification of T. D. 48360, predicated upon certain assurances of a foreign Government. Therefore, there was no legal necessity for the 30 days' notice. It cannot be claimed that T. D. 48360 was not properly promulgated and as to the letter in evidence dated September 23, 1942, in which the collector is authorized and directed to assess the sum of $75.17 as countervailing duties in the liquidation of this entry, we find that to be a revision of the amount originally published as a percentage in T. D. 48360. Such revision was made when the act of liquidation took place and it was not essential to the validity of the assessment that the letter be published as a Treasury decision, or otherwise proclaimed to the public, under the reasoning of the *Mueller* case, *supra*.

Plaintiff also contends in the brief filed that:

\* \* \* The plaintiff had the right to rely upon T. D. 48479 and to believe that goods exported from Germany pursuant to an agreement to purchase executed after August 2, 1936 would not be subject to countervailing duty.

In answer to that contention we find that the Government authorities were entitled to the right to rely upon assurances made by the German Government. It appears that both sides were mistaken in relying upon such assurances, or in the alternative, that plaintiff's witness was in error in his statements that the orders for these goods were placed subsequent to August 2, 1936.

To summarize, whether payment for this merchandise was made under a permit given by the German Government, which had not expired, or whether the plaintiff's witness was mistaken in his statements on the stand that the orders for this merchandise were placed subsequent to August 2, 1936, payment was made in Aski marks under the system of currency control exercised by the German Government, which has been judicially determined by our courts to constitute such a bounty or grant as is contemplated by section 303, *supra*. Therefore, we find and hold that the collector acted in conformity with the statute in assessing countervailing duty under said section 303, and that the claims of the plaintiff should be and the same hereby are overruled.

Judgment will be rendered accordingly.